UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONNIE LEE HICKS, II,

Plaintiff,

v.

CHERYL STRANGE, *et al.*,

Defendants.

CASE NO. 2:22-CV-284-TL-DWC

REPORT AND RECOMMENDATION

Noting Date: March 31, 2023

This matter is before the Court on referral from the District Court and on Defendants' Motion for Summary Judgment. Dkt. 21.

Plaintiff Ronnie Lee Hicks, II, formerly incarcerated at the Monroe Corrections Center, Twin Rivers Unit ("MCC-TRU"), has brought suit under 42 U.S.C. § 1983 alleging that Defendants Cheryl Strange, J. Martin, A. Watanabe,[1] and B. Blair retaliated against him for participating in the Department of Corrections' ("DOC") Resolution Program. Defendants have

---

[1] To date, Plaintiff has failed to provide accurate and sufficient information to effect service upon Defendant Watanabe. *See* Dkts. 13, 15, 17–20. As such, herein the Court recommends dismissing Defendant A. Watanabe as a party for Plaintiff's failure to prosecute. *See infra*, Discussion at II.

moved for summary judgment, arguing in part that Plaintiff has not alleged a viable claim and cannot show a constitutional violation occurred as a result of Defendants' requiring Plaintiff to follow the Resolution Program procedures.

After reviewing the Motion and relevant record, the Court concludes Plaintiff has failed to rebut Defendants' showing that there is no genuine issue of material fact regarding Plaintiff's First Amendment retaliation claims. Therefore, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 21) be granted, Plaintiff's First Amendment retaliation claims be dismissed with prejudice, and this case be closed.

## BACKGROUND

Plaintiff filed a civil rights complaint under 42 U.S.C. § 1983 on March 8, 2022. Dkt. 5. After the Court granted Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. 4) and directed service of the Complaint (*see* Dkt. 7), Defendants filed the pending Motion for Summary Judgment on January 19, 2023 (Dkt. 21). Defendants also provided Plaintiff with a notice of this dispositive motion (Dkt. 25), but Plaintiff has not responded to the Motion. However, Plaintiff attached to his Complaint a declaration in support which was signed under penalty of perjury and is being considered as evidence. Dkt. 5 at 31–33. Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## I.    Plaintiff's Allegations and Evidence

In his Complaint, Plaintiff alleges Defendants violated his First Amendment rights by retaliating against him for using the DOC's Resolution Program, formerly known as the Grievance Program. Dkt. 5. Specifically, Plaintiff alleges Defendants retaliated by (1) "repeatedly and excessively unnecessarily forcing Plaintiff to rewrite/appeal to use the grievance program," (2) restricting Plaintiff's access to the grievance program for 45 days by failing/refusing to respond to 26 separate grievances," and (3) repeatedly threatening to infract and/or suspend Plaintiff from using the grievance program." Dkt. 5 at 11. In support of these allegations, Plaintiff asserts the following:

In approximately 2012, Plaintiff received a copy of the DOC "Offender Grievance Program Manual" ("Manual"), a document produced by the DOC outlining the prisoner grievance policy procedures. Dkt. 5 at 14. Plaintiff studied and memorized most of the Manual and claims to know he is only permitted to submit five grievances per week and have a maximum of five "active" grievances at one time. *Id*. Plaintiff alleges the Manual specifically states a grievance becomes "active" on the "date typed," which is noted on the formal grievance paperwork. *Id*.

As to his claim Defendants retaliated against him by forcing him to rewrite his grievances, in particular Grievance No. 21730840, Plaintiff alleges the following. On May 5, 2021, Plaintiff submitted Grievance No. 21730840, complaining he had been denied access to the weight deck. Dkt. 5 at 15. On May 11, 2021, Defendant Blair responded, informing Plaintiff he did not "stick to the issue you experienced this day," by not stating, "who, what, when," and directed Plaintiff to rewrite the grievance. *Id*. On May 14, 2021, Plaintiff submitted a rewritten grievance, denying Defendant Blair's statements about his original grievance, stating, "all facts

and issues requested are in my initial complaint." *Id*. Defendant Watanabe responded on May 19, 2021, directing Plaintiff to file another rewrite because "[t]his complaint has multiple issues . . . separate and resubmit. Remove 3rd party/hearsay . . . include when (date/time) each incident happened." *Id*. Plaintiff responded on May 23, 2021, stating Defendant Watanabe's response "doesn't say what I'm supposed to separate . . . there is no hearsay or third party info in my previous rewrite . . . I did include the date (5/5/21) and time (C-unit gym) regarding the only incident referenced . . . This is the second unnecessary rewrite order." *Id*. at 15–16.

On July 8, 2021, Defendant Blair administratively withdrew Plaintiff's rewrite, stating, "You refused to follow rewrite instructions." *Id*. at 16. Plaintiff appealed on July 16, 2021, claiming the order to rewrite was unnecessary and "clear retaliation." *Id*. On August 11, 2021, Defendant Blair responded with more specific instructions on how to separate the claims in the grievance. *Id*. In his August 16, 2021, response, Plaintiff stated he was rewriting the grievance only because he is required to exhaust and would seek retaliation claims against Defendants Blair and Watanabe. *Id*. As a result, on August 20, 2021, Defendant Blair again withdrew the grievance for Plaintiff's failure to follow the rewrite instructions. *Id*.

Plaintiff appealed again on August 23, 2021, stating all his submissions complied with the Manual. *Id*. at 17. In her August 27, 2021, response, Defendant Blair informed Plaintiff that "concerns that have been previously administratively withdrawn are not accepted." *Id*. Plaintiff replied on August 31, 2021, repeating his submissions meet the requirements of the Manual. *Id*. Defendant Martin responded on September 13, 2021, informing Plaintiff that "the not accepted response has been overturned and your original resolution request will be addressed." *Id*.

On September 14, 2021, Defendant Blair provided a new response to Plaintiff's initial grievance, stating, "Accepted Level 1 refusal of weight deck access and staff demeanor." *Id*.

1   Plaintiff appealed this response on October 20, 2021, and Defendant Blair responded on October

2   25, 2021, stating, "Not accepted; you have 5 active requests." *Id*. at 18. Plaintiff disputed the

3   claim regarding his number of active requests on October 29, 2021, but Defendant Martin upheld

4   the determination on November 10, 2021. *Id*.

5          Plaintiff claims he repeatedly reported this activity by Defendants Blair, Watanabe, and

6   Martin to Defendant Strange, but "to no avail." *Id*.

7          As to his claim Defendants retaliated against him by restricting his access to the

8   grievance program for 45 days, Plaintiff alleges the following. Between May 23, 2021, and July

9   3, 2021, Plaintiff filed 26 grievances with complaints including, but not limited to, his unit not

10  having a scale, not enough seats in the dayroom, closure of the yard, not receiving his food

11  package, not receiving medical care, and issues with the weight deck. *Id*. at 21–24. Plaintiff

12  claims Defendant Blair failed to respond to any of these grievances over a 45-day period, thereby

13  restricting his access to the grievance program. *Id*. at 24.

14         As to his claim Defendants retaliated against him by threatening to cut him off from the

15  grievance program, Plaintiff alleges the following. Again, Plaintiff claims to know a grievance

16  becomes active on the date it is typed onto the formal grievance paperwork. *Id*. at 25. On July 8,

17  2021, Plaintiff alleges he had no active grievances. *Id*. However, on that same date, Defendant

18  Blair issued a "notification of abuse by quantity" to Plaintiff, designating him as an abuser of the

19  grievance program, claiming Plaintiff had 5 active grievances, and threatening him with "an

20  infraction and/or suspension from the resolution program." *Id*.

21         On July 12, 2021, Plaintiff received a Notice of Abuse written by Defendant Blair and

22  "became fearful she was going to write a false infraction against himself." *Id*. at 26. The next

23  day, Plaintiff asked the grievance coordinator's administrative assistant when a grievance

24

becomes active, and she responded, "It's considered formally active the date that I type it." *Id*.
Thereafter, on July 15, 2021, Plaintiff sent a kiosk message and a kite to Defendant Blair asking
to withdraw all grievances submitted on or before July 14, 2021, "because he was afraid to use
the grievance program due to Defendant Blair's written threat." *Id*. On July 30, 2021, Plaintiff
met with Defendant Blair and she informed him that a grievance becomes formally active "for
investigation" on the date it is typed. *Id*. at 26, 33. In his declaration, Plaintiff states when he
asked Defendant Blair why she did not respond to his grievances over the previously-mentioned
45-day period, she responded, "Well, I didn't respond because you put in so many grievances."
*Id*. at 33.

On October 25, 2021, Defendant Blair issued to Plaintiff another "notification of abuse
by quantity" claiming Plaintiff had 5 active grievances and "threatened to infract and/or suspend
Plaintiff from the grievance program." *Id*. at 27. Plaintiff alleges he reported Defendant Blair's
threats and false active grievance claims to Defendant Strange, who "did not rescind either
threat." *Id*.

## II. Defendants' Evidence

In support of their motion for summary judgment, Defendants submitted declarations
from Patty Willoughby, a legal assistant with Washington's Attorney General's Office who
confirmed Plaintiff custody status and location; Defendant Martin, a DOC Statewide Resolution
Specialist; and Brandi Blair, a Corrections Specialist 3 at MCC. Dkts. 22–24. Specifically,
Defendants have produced evidence demonstrating that the DOC has an established
grievance/resolution program through which prisoners may file resolution requests relating to

various aspects of their incarceration.[2] Dkt. 23-1. Prisoners have twenty working days from the date of an incident to file a resolution request, and the grievance/resolution procedure has four levels of review. *Id*. at 5, 6. The initial level, Level 0, is the informal resolution stage. Dkt. 23 at 2. At this level, the Resolution Specialist at the prison receives a written complaint from a prisoner on an issue about which the prisoner wishes to pursue a resolution. *Id*. The Resolution Specialist either pursues informal resolution, returns the complaint to the prisoner for rewriting or for additional information, or accepts the complaint and processes it as a concern that warrants Level I review. *Id*.

At Level 0, a resolution request that has been returned for rewriting must be re-submitted within five working days of receipt of the Resolution Specialist's response unless specified otherwise by the Resolution Specialist for circumstances that require more time. *Id*. Further, a request for rewriting is between the Resolution Specialist and the prisoner and cannot be appealed to the Resolution Program Manager. *Id*. The prisoner must follow the Resolution Specialist's direction on a rewrite request. *Id*. If a prisoner fails to follow the rewrite directions on two consecutive requests, the Resolution Specialist will interview the prisoner to assist them in writing the resolution request. *Id*. If the prisoner refuses to follow the third set of rewrite instructions after that interview or is beyond the rewrite due date at any stage, the Resolution Specialist will administratively withdraw the concern/request. *Id*. at 2–3.

A prisoner can appeal the Resolution Specialist's decision to not accept the resolution request by submitting an appeal to the Resolution Specialist, who will forward it to the Resolution Program Manager. *Id*. at 3. The Resolution Program Manager will either uphold the

---

[2] This program is now known as the "Resolution Program," but was formerly referred to as the Offender Grievance Program. *See* Dkt. 23 at 1 n.1.

Resolution Specialist's decision or reverse it and refer the resolution request back to the Resolution Specialist for further processing. *Id*. This review by the Resolution Program Manager is done only to determine if the concern/request should be accepted or not and does not address the merits of the issue itself. *Id*. Additionally, the appeal response cannot be appealed and repeated resolution requests on the same concern/request will not be processed. *Id*.

At the first step of the formal resolution process, Level I, a prisoner's handwritten resolution request is reviewed and responded to by the institution's Resolution Specialist. *Id*. A prisoner who is dissatisfied with the response received from the Resolution Specialist may appeal that decision. *Id*. The appeal is assigned to an employee or contract staff for review and the Superintendent or Health Services Administrator issues a formal response. *Id*. This is known as Level II. *Id*. A prisoner who is dissatisfied with the Level II response may appeal that decision to DOC's Headquarters Resolution Program Unit, where the appeal is reviewed and a formal response is issued by the Deputy Secretary or his/her designee. *Id*. This is known as Level III and is the final level of review and cannot be appealed. *Id*.

Defendants' evidence also shows that, under the Manual, prisoners may have five active resolution requests at one time. *Id*. These include active reviews, rewrites, appeals, and new concerns. *Id*. Medical concerns can be accepted over this limit with the approval of the Resolution Program Manager. *Id*. If a prisoner submits additional resolution requests or appeals past the allowable amount, the Resolution Specialist will not accept them. *Id*. at 4. Further, if a prisoner files multiple requests at the same time that will put them over the five active concerns, they will not be accepted and all requests will be sent back to the prisoner. *Id*. At that time, the prisoner may submit in writing their selection of which concern(s) they want to withdraw and which one(s) to process. *Id*.

1    Defendants submit that intentional abuse of the resolution process undermines the

2  process and interferes with the goals of the program. *Id*. A Resolution Specialist will issue a

3  courtesy reminder when abuse of the system is suspected and/or ongoing. *Id*. "Abuse" is defined

4  as submitting more than the maximum number of resolution requests. *Id*. Persistent abuse of the

5  Resolution Program may result in the prisoner being issued an infraction for interfering with the

6  duties of an employee/contract staff/volunteer. *Id*. Further, if prisoners were able to file an

7  unlimited number of resolution requests at any one time, it would overrun the system and render

8  the Resolution Program useless. *Id*. DOC would be unable to process resolution requests

9  effectively, and its ability to solve conflicts in the prisons would be severely diminished, leading

10  to a more dangerous setting for everyone involved. *Id*.

11    According to DOC records, Plaintiff filed 26 resolution requests from May 24, 2021, to

12  July 8, 2021. Dkt. 24 at 2. The requests consisted of initial complaints, rewrites, and appeals. *Id*.

13  Defendant Blair states that, due to receiving so many resolution requests from Plaintiff in such a

14  short time frame and which exceeded the five maximum allowable limit, she set aside his

15  resolution requests in order to review them all at one time. *Id*. She processed the requests in the

16  order received and accepted the first requests that met the Resolution Program guidelines. *Id*. She

17  then determined the remaining (except for medical care related concerns) as not accepted for

18  exceeding the five maximum allowable limit. *Id*.

19    Defendants submit the following summary which shows Plaintiff's resolution requests

20  were processed on July 8, 2021, in the date order received. *Id*. at 2–3.

21

22

23

24

| No. | Date Received | Log ID # | Info re. Processing |
|---|---|---|---|
| 1. | May 24, 2021 (originally received on May 7, 2021, and requested rewrite). The May 24, 2021 request was a rewrite of the previously submitted resolution request written on May 5, 2021 | 21730840 | Rewrite and later administratively withdrawn. Plaintiff refused to follow rewrite instructions. |
| 2. | May 28, 2021 | 21721318 | Accepted at Level III |
| 3. | May 28, 2021 | 21731430 | Accepted at Level I |
| 4. | June 4, 2021 | 21731107 | Accepted |
| 5. | June 4, 2021 | 21731912 | Accepted |
| 6. | June 7, 2021 | 21734386 | Accepted |
| 7. | June 11, 2021 | 21731434 | Not Accepted – Over 5 |
| 8. | June 14, 2021 | 21734387 | Not Accepted – Over 5 |
| 9. | June 14, 2021 | 20715397 | Not Accepted – Over 5; however, forwarded to PREA |
| 10. | June 14, 2021 | 21734388 | Not Accepted – Over 5 |
| 11. | June 14, 2021 | 21732518 | Not Accepted – Over 5 |
| 12. | June 14, 2021 | 21732660 | Not Accepted – Over 5 |
| 13. | June 24, 2021 | 21734389 | Not Accepted – Over 5 |
| 14. | June 24, 2021 | 21734390 | Not Accepted – Over 5 |
| 15. | June 24, 2021 | 21734391 | Not Accepted – Over 5 |
| 16. | June 24, 2021 | 21734392 | Not Accepted – Over 5 |
| 17. | June 29, 2021 | 21734393 | Not Accepted – Over 5 |
| 18. | June 29, 2021 | 21734394 | Not Accepted – Over 5 |
| 19. | June 29, 2021 | 21734395 | Not Accepted – Over 5 |
| 20. | June 29, 2021 | 21731103 | Not Accepted – Over 5 |
| 21. | June 29, 2021 | 21734399 | Accepted at Level 0 Review and sent to Health Services as it related to medical |
| 22. | June 29, 2021 | 21734400 | Accepted at Level 0 Review and sent to Health Services as it related to medical |
| 23. | July 6, 2021 | 21734396 | Not Accepted – Over 5 |
| 24. | July 6, 2021 | 21734397 | Not Accepted – Over 5 |
| 25. | July 6, 2021 | 21734398 | Not Accepted – Over 5 |
| 26. | July 6, 2021 | 21734401 | Accepted at Level 0 Review and sent to Health Services as it related to medical |

Dkt. 24 at 3–4. A review of this table shows that: 1 resolution request was administratively

withdrawn due to failure to follow rewrite instructions; 5 requests were accepted for new level

review; 17 requests were not accepted for being over the limit of 5; and, 3 requests were

forwarded to Health Services to Level 0 review. *Id*.

Defendants further note that, by June 16, 2021, Plaintiff had twelve resolution requests

pending. *Id*. Defendant Blair attempted to schedule a meeting with Plaintiff on June 18, 2021 in

order to address the following: (1) a review Plaintiff's resolution requests to see if some could be

resolved; (2) a review the Manual with Plaintiff; (3) an interview Plaintiff in connection with one

of his resolution requests; and (4) prioritize the resolution requests Plaintiff wanted to proceed

with in light of the limit of five active resolution requests allowed. *Id*. Due to scheduling

conflicts, including those due to workload, leave and holiday, Defendant Blair was not able to

meet with Plaintiff until July 30, 2021. *Id*. However, Defendant Blair did send Plaintiff a

Notification of Abuse by Quantity letter on July 8, 2021, informing Plaintiff he was "in abuse"

due to submitting requests that bring the total above five. Dkt. 24-2 at 2. Plaintiff was instructed

he had the option of withdrawing active request(s) and then resubmitting for review. *Id*. This

type of withdrawal can be done up to 5 times per calendar year and must be done in writing. *Id*.

Plaintiff could then resubmit the resolution requests he wants to pursue. *Id*.

Specifically with respect to resolution request no. 21730840 (No. 1 in the chart above),

Defendants provide the following details. In this request submitted on May 5, 2021 and received

on May 7, 2021, Plaintiff complained about access to the weight deck at the gym. Dkt. 24 at 4. In

response to the request, Defendant Blair advised Plaintiff of an April 30, 2021 memorandum

regarding the re-opening of weight decks that set new policies for their use as of May 3, 2021.

*See* Dkt. 24-1 at 2, 3. She also directed Plaintiff to "rewrite & stick to the issue you experienced

this day. Who, what, when." *Id*. at 2. Defendant Blair explained the Resolution Program Manual

states a Resolution Specialist will return a resolution request with directions to rewrite for a

1    variety of reasons, including when "[t]here is more than one concern/incident listed in the

2    Resolution Request" and/or "[t]he concern is unclear or more information is necessary." Dkt. 24

3    at 4–5. Because Plaintiff's resolution request raised numerous issues (i.e., conduct of

4    unidentified Correctional Officer and issues regarding access to the weight deck), and additional

5    information was needed regarding the conduct of the officer (i.e., the "who, what, when"),

6    Defendant Blair requested a rewrite pursuant to the Resolution Program Manual. *Id.* at 5.

7        Plaintiff submitted a rewrite, but in response was again asked to rewrite his resolution

8    request in order to separate the issues and resubmit since the rewritten request added new issues

9    and again contained multiple issues. *Id.* Plaintiff submitted another rewrite, received on May 23,

10    2021, but again failed to follow the rewrite instructions. *Id.* He also attached four single-spaced

11    handwritten notes in violation of the Manual which states "[t]he entire concern must fit in the

12    description section of one DOC 05-165 Resolution Request [and] must be a simple,

13    straightforward statement of concern." *Id.*

14        Plaintiff filed an appeal, received on July 19, 2021. *Id.* Defendant Blair met with Plaintiff

15    on July 30, 2021, to discuss the resolution request and rewrite instructions. *Id.* She again

16    instructed him to rewrite the request by sticking to the issue of the Correctional Officer refusing

17    him access to the weight deck, the Officer's demeanor, and the date and approximate time and

18    location of the incident. *Id.* She showed Plaintiff the Manual and encouraged him to follow its

19    procedures and rules. *Id.* She also explained to Plaintiff that his belief a resolution request is

20    "only active when typed" was erroneous and under the Manual, prisoners may have five active

21    resolution requests at one time. *Id.* at 6.

22        On August 16, 2021, Defendant Blair received a third rewrite from Plaintiff that again

23    failed to follow the rewrite instructions. *Id.* As a result, and in accordance with the Manual, the

24

resolution request was administratively withdrawn. *Id*. Plaintiff appealed on August 23, 2021, but the appeal was not accepted pursuant to the Manual, which provides that concerns that have previously been administratively withdrawn will not be accepted. *Id*. Plaintiff appealed this "Not Accepted" determination and Defendant Blair forwarded the resolution request to DOC Headquarters for review. *Id*. Defendant Martin at DOC Headquarters overturned the "Not Accepted" response because a complaint about the actions of DOC staff is an "acceptable concern" and therefore falls under a reviewable procedure. Dkt. 24-1 at 20. Defendant Martin informed Plaintiff his original resolution request would be addressed pursuant to the Manual. *Id*. As a result, Defendant Blair accepted the resolution request at Level I. Dkt. 24 at 6. It was reviewed on the merits, and in a response issued on October 15, 2021, determined to be unsubstantiated. *Id*.

Plaintiff appealed the Level I response on October 20, 2021. *Id*. The appeal was returned as "Not Accepted" as Plaintiff had five active requests at the time. *Id*. Plaintiff was advised to review his requests and that he could withdraw a request and resubmit his appeal on this resolution request. *Id*. Plaintiff appealed the "Not Accepted" determination on October 25, 2021. *Id*. at 7. Defendant Blair forwarded the appeal to DOC Headquarters and sent Plaintiff a Notification of Abuse by Quantity Letter informing Plaintiff he already had five active requests. *Id*. Defendant Martin at DOC Headquarters upheld the "Not Accepted" determination on November 10, 2021, citing the Manual procedures on the acceptable number of active resolution requests at one time (limit of 5). Dkt. 24-1 at 34.

Lastly, Defendants assert Plaintiff was never issued an infraction for a violation of WAC 137-25-030(558) ("Interfering with staff members, medical personnel, firefighters, or law

1   enforcement personnel in the performance of their duties"), a serious infraction, for abusing the

2   Resolution Program. Dkt. 24 at 7.

3                                          **STANDARD OF REVIEW**

4          "The court shall grant summary judgment if the movant shows that there is no genuine

5   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6   Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in

7   the light most favorable to the nonmoving party and must draw all reasonable inferences in that

8   party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party

9   has carried its burden under Rule 56, the party opposing the motion "must do more than simply

10  show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

11  *v. Zenith Radio*, 475 U.S. 574, 586 (1986).

12         The opposing party cannot rest solely on his pleadings but must produce significant,

13  probative evidence in the form of affidavits, and/or admissible discovery material that would

14  allow a reasonable jury to find in his favor. *Anderson*, 477 U.S. at 249–50. Conclusory

15  allegations and mere speculation are not enough to create a genuine issue of material fact. *See,*

16  *e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The

17  purpose of summary judgment "is not to replace conclusory allegations of the complaint or

18  answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

19  888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address

20  another party's assertion of fact as required by Rule 56(c), the Court may . . . grant summary

21  judgment if the motion and supporting materials—including the facts considered undisputed—

22  show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3). Finally, because plaintiff is *pro*

23  *se*, the Court "must consider as evidence in his opposition to summary judgment all of

24

1  [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on

2  personal knowledge and set forth facts that would be admissible in evidence, and where

3  [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true

4  and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

5  **DISCUSSION**

6  Defendants contend they are entitled to summary judgment because: (1) Plaintiff has

7  failed to allege Defendants Strange and Martin personally participated in any constitutional

8  violations; (2) Plaintiff has failed to allege claims of retaliation because Defendants' decisions on

9  the resolution requests do not amount to retaliatory conduct; and (3) Defendants are entitled to

10 qualified immunity. Dkt. 21. After addressing Plaintiff's failure to provide an address for an

11 unserved defendant, the Court will address Defendants' arguments in turn.

12 **I.    Failure to Prosecute – Unserved Defendant**

13 On April 26, 2022, the Court directed service of the Complaint on the named Defendants.

14 Dkt. 7. The Clerk's Office mailed the Complaint and waiver of service forms to each Defendant.

15 However, by Notice entered on May 24, 2022, Defendants informed the Court they were unable

16 to identify Defendant A. Watanabe as a current State of Washington employee and, therefore,

17 were unable to waive service on behalf of this Defendant. Dkt. 13. Further, Defendants noted

18 attempts were made to mail the waiver of service to Defendant A. Watanabe's last known

19 mailing address with no response. *Id*. Subsequently, on June 28, 2022, the Court directed

20 Defendants to file under seal the last known address for Defendant A. Watanabe. Dkt. 15.

21 Defendants filed the address under seal on June 28, 2022 (*see* Dkt. 17 (sealed)), and the Court

22 directed service on July 6, 2022 (Dkt. 18). The mailing sent to Defendant A. Watanabe was

23 returned to the Court marked "Undeliverable/Return to Sender, Unable to Forward." Dkt. 19. As

24

a result, on December 5, 2022, the Court issued an Order directing Plaintiff to provide the

complete address for Defendant A. Watanabe so the Court could again attempt service by mail.

Dkt. 20. The Court also warned Plaintiff that, if he failed to provide the address by December 30,

2022, it would recommend dismissal of Defendant A. Watanabe from this action for failure to

prosecute. *Id*. To date, Plaintiff has failed to provide an address and Defendant A. Watanabe has

not been served. *See* Dkt.

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service of the summons

and complaint must be made upon a defendant within 120 days after the filing of the complaint.

Unless the plaintiff can show good cause for his failure to serve, the Court shall dismiss the

action without prejudice as to that defendant or shall extend the time for service. Fed. R. Civ. P.

4(m). In cases involving a plaintiff proceeding *in forma pauperis*, "an incarcerated *pro se*

plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the

summons and complaint and . . . should not be penalized by having his action dismissed for

failure to effect service where the U.S. Marshal or the court clerk has failed to perform his

duties." *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (quoting *Puett v. Blanford*, 912

F.2d 270, 275 (9th Cir. 1990)), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472

(1995). "So long as the prisoner has furnished the information necessary to identify the

defendant, the marshal's failure to effect service is "automatically good cause." *Walker*, 14 F.3d

at 1422 (quoting *Sellers v. United States*, 902 F.2d 598, 603 (7th Cir. 1990)). However, where a

*pro se* plaintiff fails to provide accurate and sufficient information to effect service of the

summons and complaint, the Court's *sua sponte* dismissal of the unserved defendant is

appropriate. *Walker*, 14 F.3d at 1421-22.

Plaintiff has the general duty to prosecute this case. *Fidelity Philadelphia Trust Co. v.*

*Pioche Mines Consolidated, Inc.*, 587 F.2d 27, 29 (9th Cir.1978). He has failed to do so by ignoring his duty to provide the Court with a current service address for Defendant A. Watanabe or an explanation of why he is unable to comply with the Court's Order. *See* Dkts. 13, 15, 17–20. A court cannot exercise jurisdiction over a defendant without proper service of process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4").

Plaintiff has not provided a current address for unserved Defendant A. Watanabe nor has he responded to the Court's Order in any other manner. Thus, the undersigned recommends Plaintiff's § 1983 claim against Defendant A. Watanabe be dismissed without prejudice for lack of personal jurisdiction.

## II.    Personal Involvement

In Defendants' Motion for Summary Judgment, Defendants assert the claims against Defendants Strange and Martin should be dismissed because they did not personally participate in any conduct related to the underlying claims in this case. Dkt. 21 at 20–21. Plaintiff has not responded to Defendants' argument. *See* Dkt.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Here, the Complaint contains allegations Defendant Martin knew of Defendant Blair's retaliation against Plaintiff for filing too many grievances and nevertheless upheld certain grievance responses. Dkt. 5 at 19. The Complaint also contains allegations Plaintiff informed Defendant Strange of Defendant Blair's retaliatory actions and "did nothing." *Id*. at 19, 20, 27, 28. Attached to Plaintiff's Complaint is a Declaration by Plaintiff signed under penalty of perjury that asserts, in part, Plaintiff repeatedly wrote letters to Defendant Strange reporting Defendant Blair's threats and false active grievance claims. Dkt. 5 at 33. Because Plaintiff's verified Declaration was signed under penalty of perjury, the Court considers it as an opposing affidavit and, therefore, evidence for summary judgment purposes. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

In connection with Defendants' argument here on summary judgment, the Court has also reviewed the evidence to determine whether it shows these two Defendants had any involvement in decisions relating to Plaintiff's resolution requests and any alleged resulting harm. While the evidence indicates no action taken by Defendant Strange, Plaintiff wrote to Defendant Strange several times to alert her to his situation involving Defendant Blair's supposed threats and false active grievance claims, thus putting Defendant Strange on notice. *See* Dkt. 5 at 33. Further, the evidence submitted by Defendants in support of their Motion does show Defendant Martin's participation. *See* Dkt. 24-1 at 20, 22, 30, 34, 35, 56, 295. For example, on November 10, 2021, Defendant Martin responded to Resolution Request No. 21730840, informing Plaintiff that he was upholding the "Not Accepted" determination as to that grievance. Dkt. 24-1 at 34.

A review of the evidence, viewed in the light most favorable to Plaintiff, does show Defendants Strange and Martin had personal involvement in the conduct giving rise to the alleged constitutional violations. Because Plaintiff sought resolution from Defendant Strange and received no response, and because the evidence does show Defendant Martin had knowledge of Plaintiff's complaints and participated in certain decisions on those complaints, at least in part, the Court recommends these Defendants not be dismissed from this case based on lack of personal participation.

**III.    Retaliation**

Plaintiff alleges each named Defendant retaliated against him for filing resolution requests or grievances. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Id*. at 1114–15; *see also Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Here, while there is no question that filing prison grievances is protected conduct, there is no evidence any of the named Defendants took any adverse action against Plaintiff for doing so or that any action chilled Plaintiff's activities. Plaintiff's assertions of Defendants' adverse actions against him amount to: (1) Defendants Blair and Watanabe "forced" Plaintiff to "repeatedly unnecessarily" rewrite resolution request no. 21730840 (Dkt. 5 at 18–19); (2) Defendants "restricted his access to the grievance program" by delaying responses to Plaintiff's 26 submitted resolution requests (*id*. at 24); and (3) Defendant Blair "threaten[ed] to infract

and/or suspend" Plaintiff from the grievance program by issuing him the two Abuse by Quantity letters (*id*. at 27–28). However, none of these assertions of adverse action is supported by the record. Rather, the record indicates Defendants were enforcing procedures established in the Manual applicable to all offender grievances. *See generally* Dkt. 23-1. Plaintiff has also submitted no evidence—other than speculative and conclusory assertions—that Defendants were motivated by anything other than applying the Manual's rules and procedures. Finally, the Court finds Defendants' actions advanced legitimate correctional goals, including: (a) intentional abuse of the resolution process undermines the process and interferes with the goals of the program; (b) if prisoners were able to file an unlimited number of resolution requests at any one time, it would overrun the system and render the Resolution Program useless; and (c) DOC would be unable to process resolution requests effectively, thereby diminishing its ability to solve conflicts in the prisons which could lead to a more dangerous setting for everyone involved. *See* Dkt. 23 at 4. Prison officials have a legitimate penological interest in requiring adherence to an established grievance procedure. *See Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010) ("no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings") (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Accordingly, the Court recommends that Plaintiff's claims of retaliation be dismissed.

## IV.     Qualified Immunity

Defendants assert that, even if Plaintiff has presented evidence sufficient to survive a motion for summary judgment on his § 1983 claims, qualified immunity nonetheless protects them from liability for damages.

Qualified immunity requires an assessment of whether the official's conduct violated "'clearly established constitutional or statutory rights of which a reasonable person would have

1    known.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*,

2    137 S. Ct. 548, 551 (2017)). Qualified immunity is an affirmative defense to damages liability

3    and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision*

4    *Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). The Court must decide the

5    qualified immunity issue at the summary judgment stage when the issue turns on questions of

6    law. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). The Court can analyze

7    the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236

8    (2009).

9           In considering the first prong, the Court must ask, "[t]aken in the light most favorable to

10   the party asserting the injury, do the facts alleged show the officer's conduct violated a

11   constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, viewed in

12   the light most favorable to Plaintiff, the facts do not show that Defendants' acts violated

13   Plaintiff's First Amendment rights. Accordingly, Defendants are entitled to qualified immunity

14   because the first prong of the qualified immunity test is not satisfied.

15   **V.      IFP on Appeal**

16          The Court recommends revoking Plaintiff's IFP status for purposes of an appeal of this

17   matter. IFP status on appeal shall not be granted if the district court certifies "before or after the

18   notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P.

19   24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if

20   he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any

21   arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

22   *Williams*, 490 U.S. 319, 325 (1989). Because an appeal from this matter would be frivolous, the

23

24

1 Court recommends that Plaintiff's IFP status be revoked for purposes of appeal.

2 **CONCLUSION**

3     The undersigned recommends that Defendants' Motion for Summary Judgment (Dkt. 21)

4 be granted and that Plaintiff's First Amendment retaliation claims be dismissed with prejudice.

5 The Court also recommends that Defendant Watanabe be dismissed as a party for Plaintiff's

6 failure to prosecute. Finally, the Court recommends that Plaintiff's IFP status be revoked for

7 purposes of any appeal.

8     Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

9 shall have fourteen (14) days from service of this report to file written objections. *See also* Fed.

10 R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

11 *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of

12 those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda*

13 *v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time

14 limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on March

15 31, 2023, as noted in the caption.

16     Dated this 15th day of March, 2023.

17

18 David W. Christel

19 Chief United States Magistrate Judge